UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN HOME ASSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 02-3842** |
| **LIBERTY MUTU8AL INSURANCE COMPANY ET AL.** | **SECTION: "S" (4)** |

### ORDER AND REASONS

Liberty Mutual Insurance Company (Liberty) filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure seeking reconsideration of the court's Order and Reasons of August 2, 2005, granting American Home Assurance Company's (American Home) motion for summary judgment and denying Liberty's motion for summary judgment on the issue of coverage under the Liberty policy for the negligent repair of the tank trailer.

**IT IS HEREBY ORDERED** that Liberty's Rule 59(e) motion for reconsideration is **DENIED**.  (Document #180.)

### I.  DISCUSSION

The facts of this case are found in the Order and Reasons of August 2, 2005, and are not repeated here.  Liberty raises two issues in its Rule 59(e) motion:  1) there is a genuine issue of

material fact regarding which Dana entity leased and repaired the tank trailer, and 2) importing the "separation of insureds" language from the definition of "insured" into the "Leased Auto Exclusion" runs counter to Louisiana's rules of contract interpretation.

**A. Legal standard**

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). The court "has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under [Rule 59(e)]." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990). "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." In re Transtexas Gas Corp., 303 F.3d at 581 (internal quotation and citation omitted). "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." In re Self, 172 F.Supp.2d 813, 816 (W.D.La. 2001).

**B. Genuine issues of fact**

Liberty contends that there are genuine issues of material fact concerning whether Dana Leasing owned and leased the tank trailer and Dana Container performed the repairs pursuant to a separate agreement with Crowley. Liberty argues that the court ignored substantial evidence offered by Liberty that Dana Transport owned the tank trailer at the time of the January 2001 accident.

Liberty presents evidence that Dana Transport, Inc. held the original title to the tanker trailer when it was purchased on October 3, 1997. The certificate of title alone does not raise a

genuine issue of fact concerning which Dana entity leased the tank trailer to Crowley. Ronald Dana explained the roles of the various entities in his deposition of May 12, 2005:

> [Dana Leasing] was incorporated in 1973. Its purpose was to separate revenue from the Transport company to just strictly lease revenues, so it wouldn't dilute the profitability. . . . [Dana Leasing] rented trailers to customers. [at p. 157.]
> . . . .
> Dana Leasing [originally leased that trailer]. . . . It was brand new when I gave it to Crowley [in 1997]. [at p. 147-48.]
> . . . .
> [A] lot of my customers wouldn't accept billing from two different companies. They put one vendor in there, and they want to pay one. They don't want to pay Leasing on invoice for the trailer being at the site, and Transport to haul it in some cases.
> We separate it because some of them don't have the internal structure to do it. . . . It is too confusing for them. . . . But the Dana Leasing is the leasing arm of this company, tank trailers, at that time. [at p. 81-82.]
> . . . .
> What we did was we, as in this instance, Dana Leasing was in the trailer leasing business, which is what was involved in this situation, a tank trailer. That is how we define Dana Leasing separate from Dana Container. [at p. 18.]
> . . . .
> Dana Container was an approved vendor to do maintenance work for Crowley, totally separate from Dana Leasing. Let that be understood. Dana Container had an agreement with Crowley to work on the equipment. [at p. 43.]

Ron Dana stated that Dana Container did not own any trailers and did not lease the trailer to Crowley or others. Deposition at p. 158-60. The leasing arrangements were between Dana Leasing and Crowley. Id. at p. 160. Crowley had a separate lease agreement with Dana Leasing and a separate vendor agreement for maintenance with Dana Container. Id. at 164-65. Edelmiro DeAnda, a Dana Container employee, was the mechanic who performed the repairs detailed on ticket number 548516 several days prior to the accident. Id. at p. 162-64; AutoPay Employee Earnings Record. Dana Container presented an invoice to Crowley with instructions to remit

3

payment to Dana Container, Inc.  Payment was received by Dana Container on January 18, 2001.

In further support of its argument that Dana Transport, not Dana Container, performed the repairs,  Liberty offers the Dana entities's answers in the lawsuits filed by the Godeaux family in the United States District Court for the Southern District of Texas and by Godeaux's employer in the 31st Judicial District Court for the Parish of Jefferson Davis, in which the Dana entities admit that Dana Transport performed maintenance on the tank trailer on January 3, 2001.  Further, Liberty questioned Ron Dana in his deposition about the answers in the other Godeaux cases, and he admitted that he told his attorneys that Dana Transport performed the work when the attorneys were preparing the pleadings.

The answers prepared by counsel in the other Godeaux cases are not reliable, probative evidence to create a genuine issue of fact as to whether Dana  Container performed the repairs.  The answers were filed before discovery and the development of the case.  Hal Broussard, counsel for the Godeaux plaintiffs, testified in his deposition that, after discovery and investigation, he established to his satisfaction that Dana Container performed the repairs.  Broussard was prepared to try the case for negligent repair operation against only Dana Container.  Further, Ron Dana's statement in his deposition cannot be read in isolation.  In the same deposition, he stated unequivocally that Dana Container performed the repairs and that it had not leased the tank trailer.  In his deposition, Dwight Menard corroborates Ron Dana's testimony that Dana Container performed the repairs.

Liberty further contends that there is a genuine issue of material fact whether Dana Leasing was a separate corporate entity or if Dana Leasing ceased to exist.  Liberty relies on an

"Agreement and Plan of Liquidation," which indicates that a plan of liquidation was made on December 30, 1986, between Dana Transport and Dana Leasing voluntarily dissolving Dana Leasing.  The document, without more, does not raise a genuine issue of material fact as to the existence of Dana Leasing in 1997 when it leased the tank trailer to Crowley.  Dana Leasing clearly existed in some capacity as evidenced by Liberty's own policy, which lists Dana Leasing as a separate insured.  Further, the evidence of Dana Leasing's liquidation in 1986 is not material because it does not address the issue of whether the repair function was performed by Dana Container.

Liberty argues that there is a genuine issue of material fact as to whether the Dana entities operated as separate companies.  The manner in which Ron Dana operated his companies is not material to the issues before the court.  The companies were incorporated separately and their were named separately as insureds under the Liberty policy.

Accordingly, for these reasons and those stated in the court's Order and Reasons of August 2, 2005, there are no genuine issues of material fact that preclude summary judgment in this case.

## C.  The separation of insureds provision

Liberty argues that the separation of insureds language is inapplicable to the leased auto exclusion.  Rule 59(e) is not properly invoked on this issue because Liberty does not present newly discovered evidence, but reurges arguments that have been resolved.

## II. CONCLUSION

Liberty has not demonstrated manifest errors of law of fact or presented newly

discovered evidence to support a Rule 59(e) motion. Accordingly, the Rule 59(e) motion is denied.

      New Orleans, Louisiana, this __7th__ day of September, 2006.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**