UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN HOME ASSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO:  02-3842** |
| **LIBERTY MUTUAL INSURANCE COMPANY ET AL.** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Liberty Mutual's Motion for Summary Judgment dismissing the claims of American Home Assurance Company is **DENIED**.  (Document #220.)

### I. BACKGROUND

The facts are set forth in this court's Order and Reasons of August 2, 2005, and are not repeated here.  Succinctly, Howard Dwayne Godeaux was killed when an 18-wheel tractor trailer was struck by a tire and rim that came off of a container trailer owned by Dana Transport, Inc. (Dana Transport) and /or Dana Leasing Systems, Inc. (Dana Leasing) and leased to Crowley Maritime/Crowley Liner Services, Inc.  American Home Assurance Company (American Home) provided Commercial Auto Liability Coverage for the Dana entities, and Liberty Mutual Insurance Company (Liberty Mutual) issued a policy for Garage Liability Coverage.  Godeaux's

survivors filed suit[1] and a settlement was reached through mediation. Although Liberty Mutual received notice, it declined to participate in the mediation. American Home contributed the policy limit of $1,000,000, and reserved its rights to deny coverage for the negligent garage operation and to pursue contribution and bad faith claims for willful failure to contribute against Liberty Mutual.[2] The Dana entities assigned their rights against Liberty Mutual to American Home. American Home filed a complaint for declaratory judgment that Liberty Mutual provides coverage for Dana Container's negligent repair of the container trailer and seeking contribution, reimbursement, and indemnification for the amount paid in the settlement, as well as defense costs.

The court granted American Home's motion for partial summary judgment declaring that there is coverage under the Liberty Mutual policy for any liability incurred by Dana Container, which performed repairs to the vehicle,[3] for negligent garage operations and that Liberty Mutual had a duty to defend Dana Container in the Godeaux litigation. Further, in its opposition to the motion for partial summary judgment, Liberty Mutual put forth no argument in opposition to American Home's contention that the standard of proof, in order to receive contribution for the

---

[1] Crowley's insurer, Lumberman's Mutual Casualty Company was a defendant, but the company is not involved in this motion.

[2] American Home alleges that "[m]ost of this amount was paid to settle the alleged liability of Dana Container for the alleged negligent repair shop operation. The balance was paid to settle the allegation of owner/lessor's liability brought against Dana Transport and/or Dana Leasing."

[3] In the order denying Liberty Mutual's Rule 59(e) motion on September 7, 2006, the court held that the evidence established that Dana Container performed the repairs.

amount it paid in settlement, is proof of Dana Container's potential liability.

Liberty Mutual filed a motion for partial summary judgment dismissing American Home's claims for Liberty Mutual's share of the settlement and defense costs in the Godeaux lawsuit because there is no legal basis for relief.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

### B. Choice of law

Liberty Mutual contends that Texas law applies in this case because of the significant contacts with Texas and its interest in the dispute.[4]  Liberty Mutual argues that the settlement

---

[4] Specifically, Liberty Mutual relies on Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co., 236 S.W.3d 765 (Tex. 2007), as applied in Liberty Mutual Ins. Co. v. Mid-Continent Ins. Co., 508 F.3d 261 (5th Cir. 2007) for the propositions that 1) a co-insurer that voluntary pays more than its shares cannot recover from other co-insurers, and 2) there is no right to recover against another co-insurer for subrogation because the insured has fully recovered its loss.  The facts of Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co. are distinguishable from this case.  Liberty Mutual and Mid-Continent provided the same insured applicable primary insurance coverage and cooperatively assumed the defense of the suit against the common insured, admitting coverage.  Liberty Mutual settled the case for $1,500,000 and funded $1,350,000.

3

involves a Texas lawsuit arising from alleged negligent work performed in Texas, the coverage is for a facility in Texas where garage repair work was performed, and the relationship of the parties to the settlement with Texas.

A federal district court exercising diversity jurisdiction must apply the choice of law provision of the forum state to determine which state's substantive laws apply. See Klaxon v. Stentor Elec. Mfg. Co., 61 S.Ct. 1020, 1021 (1941. Louisiana's choice-of-law methodology is set forth in Louisiana Civil Code articles 3515 and 3537. The provisions "afford the balancing of competing interests between states." Champagne v. Ward, 893 So.2d 773, 786 (La. 2005). "The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand." Id.

Louisiana Civil Code article 3537 governs the choice of law in cases involving conventional obligations and provides:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515,[5] as well as the policies

---

Mid-Continent paid only $150,000 because it valued the case at $300,000. The Supreme Court of Texas held that there was no direct duty of reimbursement of the voluntary payment. In a concurring opinion, one of the Justices emphasized a belief that the decision was confined to the factual circumstances presented.

[5] Article 3515 contains the general principles from which the other articles on Conflict of Laws in Book IV are derived.

>of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The Revision Comments following Article 3537 state:

>This Article establishes the general approach for selecting the law applicable to conventional obligations . . . .  In essence, this Article applies in the absence of an effective choice of law by the parties.

La. Civ. Code art. 3537 Revision Comments (a) (1991).  Revision Comment (c) explains the relationship between articles 3537 and 3515:

>(c) Relation to Article 3515.  The first paragraph of this Article enunciates the objective of the choice-of-law process for contract conflicts in language that is purposefully identical to that of the first paragraph of Article 3515.  These two Articles and the comments accompanying them are intended to be read together.  As in Article 3515, the objective is to identify "the state whose policies would be most seriously impaired," that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences "if its law were not applied" to the issue at hand.  As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision of each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of the others.
>
>   The second paragraph of this Article prescribes the process or method for attaining the objective enunciated in the first paragraph in language that is parallel to, though more specific than, the language employed in the second paragraph of Article 3515.  Article 3537 adds specificity to the description of this process by: providing an illustrative list of the factual contacts that are usually pertinent in contract conflicts; by adding to the list of "policies mentioned in Article 3515" certain sets of policies that are *ex hypothesi* pertinent in contract conflicts; and by providing that the evaluation of the strength and pertinence of the involved policies is to be made "in the light of . . . the nature, type, and purpose of the contract."
>
>   After evaluating the contacts with each state, the court determines that Louisiana has the

5

greater connection with the parties, the accident, and the settlement. The fatal accident occurred in Louisiana and resulted in the death of a Louisiana resident. The plaintiffs in the underlying Godeaux lawsuit are Louisiana residents, and the mediation which produced the settlement and reservation of rights took place in Louisiana. The insureds are New Jersey corporations, and the policies were issued in New Jersey to insure operations and facilities throughout the country. Accordingly, the law of Texas is not applicable in this case, and Liberty Mutual's motion for partial summary judgment on the issue of the applicability of Texas law is denied.[6]

**C. Payment from Liberty Mutual for its fair share of the loss**

American Home contends that is entitled to recover from Liberty Mutual for the amount it paid to the Godeaux plaintiffs and for Liberty Mutual's portion of the defense costs. Liberty Mutual contends that there is no legal basis for the relief that American Home seeks. Liberty Mutual argues that American Home made a voluntary payment, even though American Home has always maintained that it did not insure the entity or the risk responsible for 90% of the claim that it paid to settle. Liberty Mutual argues that no contribution claim lies when two insurers cover different risks, and that American Home has no subrogation rights because the insured was fully indemnified.

"Indemnity is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement." Couch at § 217:16. "In the insurance context, the right to indemnity may arise, as in the case of contribution, either in the insurer's own right

---

[6] It is noteworthy that Liberty Mutual did not argue that Texas law applied to the interpretation of the leased auto exclusion in the insurance contract, which was considered in the court's Order and Reasons dated August 2, 2005.

or by way of subrogation to the right of its insured." Id. Under Louisiana law, "[i]ndemnity shifts the entire loss from a tort-feasor only technically or constructively at fault to one primarily responsible for the act that caused the damage." Terra Resources, Inc. v. Lake Charles Dredging & Towing Inc., 695 F.2d 828, 833 (5th Cir. 1983) (quoting Green v. Taca International Airline, 304 So.2d 357, 359 (La. 1974)). In the civil law, indemnity is based on restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. See Klumpp v. XYZ Ins. Co., 547 So. 2d 391, 393 (La. Ct. App. 1989).

"When one of two or more potentially liable insurers pays a loss, whether in satisfaction of a judgment or in settlement of a claim, it may then seek payment from the other insurers of their fair share of the loss." Couch on Insurance, 15 Couch on Ins. § 217:4 (3d ed. 2007). "[T]he payment sought is referred to as a 'contribution.'" Id. "In the insurance context, the right to contribution among insurers arises in two basic circumstances:  1) an insurer of a joint tortfeasor has paid all, or greater than its share, of a loss; 2) a single insured is covered by concurrent or "double insurance, and one insurer paid all, or greater than its share, of a loss." Id.

American Home agreed to defend its insured and ultimately paid the loss in settlement of the claim because the complaint contained allegations of failure to conduct an inspection and failure to maintain the vehicle in proper condition, which if proved true, would fall within the coverage of American Home's policy. See American Home Ass. Co. v. Czarniecki, 230 So.2d 253, 259 (La. 1969) ("[T]he insurer's duty to defend . . . is determined by the allegations of the injured plaintiff's petition."). American Home fulfilled its obligation under its policy in good

faith in order to reduce its insured's exposure. In the settlement agreement, the Dana entities and American Home Assurance Company "reserved all rights to pursue coverage for some or all of the payments" against Liberty Mutual.

In the Order and Reasons of August 2, 2005, the court declared that there is coverage under the Liberty Mutual policy for any liability incurred by Dana Container for negligent garage operations and that Liberty Mutual had a duty to defend Dana Container in the Godeaux litigation. American Home is entitled to proceed to trial to recover against Liberty Mutual for Liberty Mutual's share of the settlement and defense costs. At trial, it is American Home's burden to establish the amount of the settlement attributable to the potential liability of Dana Container and the portion of defense costs attributable to the defense of Dana Container.

Accordingly, Liberty Mutual's motion for partial summary judgment dismissing American Home's claims is denied.

New Orleans, Louisiana, this  12th  day of February, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**